**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**COMMUNICARE, LLC d/b/a**
**GREENBRIER HEALTHCARE**
**CENTER,**
As authorized representative[1] of
Hestle Huffman
6455 Pearl Rd.
Parma Heights, Ohio 44130

                                                                Judge:

**SABER HEALTHCARE GROUP**
**d/b/a BATH MANOR SPECIAL**
**CARE CENTER**
As authorized representative of Opal Hudgins
2330 Smith Road
Akron, Ohio 44333

**LEGACY HEALTH SERVICES, LLC**
**d/b/a PARKSIDE VILLA,**
As authorized representative of
Marcella Miller
7040 Hepburd Rd..
Cleveland, Ohio 44130

                    PLAINTIFFS,                    Case No.:


v.


 **CYNTHIA C. DUNGEY**,
 in her official capacity as the Director of
 the Ohio Department of Job and Family
 Services,
 30 East Broad Street 32nd Floor
 Columbus, Ohio 43215

 And,

---

[1] Federal law requires state agencies to permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the state agency responsible for issuing determinations on Medicaid eligibility. *See* 42 C.F.R. § 435.923.

1

**BARBARA SEARS**
In her official capacity as the Director of
the Ohio Department of Medicaid
50 West Town Street, Suite 400
Columbus, Ohio 43215

DEFENDANTS.

## PLAINTIFFS' COMPLAINT

## PRELIMINARY STATEMENT

As a condition of receiving federal funds, the State of Ohio is required to operate the Medicaid program in compliance with the Social Security Act and implementing regulations, pursuant to 42 U.S.C § 1396(c).  This case concerns the failure of Defendant Cynthia C. Dungey ("Dungey"), the Director of the Ohio Department of Job and Family Services ("ODJFS"), and Defendant Barbara Sears ("Sears"), Director of the Ohio Department of Medicaid ("ODM"), (hereinafter collectively referred to as "Defendants"), to ensure that Defendants comply with their obligation to afford Medicaid benefits to a resident in a long-term care facility in accordance with the constitution and the laws of the United States.  Defendants are directly responsible for policies necessary for the implementation of a system for determination of eligibility for Medicaid that complies, in all aspects, with federal law.

The Defendants' failure to comply with federal law to determine Medicaid benefits to Residents of Petitioners' skilled nursing facilities is a violation of the Federal Medicaid Act at 42 U.S.C. § 1396a (a)(17)(b) (1988); 20 CFR § 416.1201(a)(1); 42 U.S.C. § 1396r-5(c)(3); the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

2

## PARTIES

1.      Plaintiff, Hestle Huffman ("Huffman"), is a resident of Communicare, LLC d/b/a Greenbrier Healthcare Center ("Greenbrier"), and is a beneficiary of Ohio Medicaid Benefits. Plaintiff has appointed Greenbrier as his authorized representative to bring the instant suit on his behalf.  The Communicare, LLC family of Companies is a limited liability company organized under the laws of the State of Ohio, and owns and operates Greenbrier, a skilled nursing facility located at 6455 Pearl Rd., Parma Heights, OH 44130.

2.      Plaintiff, Opal Hudgins ("Hudgins"), was a resident of Bath Manor Special Care Center ("Bath Manor") and is a beneficiary of Ohio Medicaid Benefits.  Plaintiff appointed Bath Manor as her authorized representative to bring the instant suit on her behalf.  Saber Healthcare Group is a limited liability company organized under the laws of the State of Ohio, and owns and operates Bath Manor a skilled nursing facility located at 2330 Smith Rd., Akron, OH 44333.

3.      Plaintiff, Marcella Miller ("Miller"), is a resident of Legacy Health Services d/b/a Parkside Villa, and is a beneficiary of Ohio Medicaid Benefits.  Plaintiff has appointed Parkside Villa as her authorized representative to bring the instant suit on her behalf.  Legacy Health Services is a corporation organized under the laws of the State of Ohio, and owns and operates Parkside Villa, a skilled nursing facility located at 7040 Hepburn Road, Cleveland, OH  44130.

4.      The Defendant Cynthia C. Dungey is the Director of the Ohio Department of Job and Family Services ("ODJFS"), which is the department of the State of Ohio that, under Ohio law and applicable federal regulations, was the single state agency charged with responsibility for administering and supervising Ohio's Medicaid program at the time the Medicaid applications at issue here were submitted. At all times material to this Complaint, Defendant Dungey acted under

color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only.

5.     The Defendant Barbara Sears is the Director of the Ohio Department of Medicaid ("ODM"), which is now the department of the State of Ohio that, under Ohio law and applicable federal regulations, is the single state agency charged with responsibility for administering and supervising Ohio's Medicaid program.  At all times material to this Complaint, Defendant Sears acted under color of state law in administering the regulations, customs, policies, and practices material herein.  She is sued in her official capacity only.

## JURISDICTION AND VENUE

6.     This action arises under the Title XIX of the Social Security Act, 42 U.S.C. §1396a *et seq.* ("the Medicaid Act"), the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.* and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

7.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343.

8.     Declaratory relief is sought pursuant to 28 U.S.C. §§2201 and 2202.

9.     Venue lies in this forum pursuant to 28 U.S.C. §1391(b) and Local Rule 82.1.

10.    Medicaid provides health care benefits to qualifying low-income individuals— including, in this case, the elderly and disabled. 42 U.S.C. § 1396, *et seq.*

11.    Medicaid is joint federal and state program whereby participating states receive federal financial assistance and, in return, must follow the requirements of 42 U.S.C. §1396a(a), the Medicaid Act and its rules and regulations.

## STATEMENT OF FACTS

## HESTLE HUFFMAN

4

12.     Greenbrier is a skilled nursing facility in the state of Ohio and, as part of its mission, is dedicated to providing compassionate, long-term care for its residents.

13.     Mr. Huffman ("Huffman" and/or "Plaintiff"") is a resident of Ohio who suffers from numerous medical conditions that require twenty-four (24) hour care and assistance.

14.     Huffman is insolvent and in need of Medicaid benefits to pay for his care and assistance at Greenbrier where he was admitted to receive long term care and nursing services on September 4, 2014.

15.     On November 20, 2014, an attorney was appointed as Mr. Huffman's guardian.

16.     On October 24, 2016 and November 28, 2016, applications for Medicaid medical assistance benefits were submitted by Greenbrier on behalf of Mr. Huffman.

17.     On October 31, 2016, the Agency issued a request for verification of Mr. Huffman's resources, including bank statements ("Resources").

18.     The guardian for Mr. Huffman was required to obtain a court order prior to obtaining access to said Resources. Without permission from the court, the guardian was unable to obtain access to Mr. Huffman's Resources. Therefore, the assets should not be considered available and the Defendants should not have delayed the application process and should have approved Medicaid without consideration of the assets.

19.     At all times relevant hereto, Huffman lacked mental and physical capacity to act on his own behalf.  Huffman was fully reliant on his guardian, to gather information in accordance with the Medicaid application process.

20.     On December 30, 2016, the Agency received bank statements.

21.     On February 6, 2017, Defendants denied Mr. Huffman's Medicaid Applications dated October 24, 2016 and November 28, 2016 due to requested documentation and/or documents not being submitted to Defendants pertaining to Mr. Huffman.

## OPAL HUDGINS

22.     Bath Manor is a skilled nursing facility in the State of Ohio and, as part of its mission, is dedicated to providing compassionate, long-term care for its residents.

23.     Opal Hudgins ("Hudgins" and/or "Plaintiff") is a resident of Ohio who suffers from numerous medical conditions that require twenty-four (24) hour care and assistance.

24.     Hudgins is insolvent and in need of Medicaid benefits to pay for her care and assistance at Bath Manor where she was admitted to receive long-term care and nursing services on October 27, 2016, Ms. Hudgins was admitted as a resident at Bath Manor in Akron, Ohio.

25.     On January 5, 2017, an application for long term care was filed on behalf of Hudgins, age 91.

26.     A legal guardian was appointed for Ms. Hudgins on December 1, 2016 granting guardianship of her person and estate.

27.     On January 9, 2017, a checklist was sent to the guardian with a due date of January 20, 2017 requesting verification of income and resources.

28.     On February 15, 2017, the authorized representative (AR) from Bath Manor contacted Defendants to report the first checklist was not received.

29.     AR argued that although the Ms. Hudgins had a guardian, the guardian was not cooperative in assisting in obtaining verifications therefore the assets should not be considered available.  The AR further argued that Defendants should not have delayed the application process and should have approved Medicaid without consideration of the assets.

30.     At all times relevant hereto, Hudgins lacked mental and physical capacity to act on her own behalf.  Hudgins was fully reliant on her guardian, to gather information in accordance with the Medicaid application process.

31.     On March 22, 2017, the AR sent an email to Defendants requesting assistance in obtaining the necessary documents needed to finish processing the Ms. Hudgins' application.

32.     On April 12, 2017, Defendants received the guardian's inventory of assets from the Probate Court and determined the Ms. Hudgins had a checking account and real property with values in excess of the Medicaid eligibility resource limits ("Resources").

33.     On April 14, 2017, Defendants denied Ms. Hudgins' Medicaid application due to resources in excess of the Medicaid eligibility limits.

## MARCELLA MILLER

34.     Parkside Villa is a skilled nursing facility in the State of Ohio and, as part of its mission, is dedicated to providing compassionate, long-term care for its residents.

35.     Ms. Marcella Miller ("Miller" and/or "Plaintiff") is a resident of Ohio who suffers from numerous medical conditions, including dementia, that require twenty-four (24) hour care and assistance.

36.     Ms. Miller is insolvent and in need of Medicaid benefits to pay for her care and assistance at Parkside Villa where she was admitted to receive long term care and nursing services on January 16, 2015.

37.     On March 4, 2015, an application for long term care was filed on behalf of Ms. Miller.

38.     On March 19, 2015, Miller appointed her husband, William Miller, as her designated authorized representative.

7

39.    On December 10, 2015, Defendants sent a 9401 form to Parkside Villa notifying the facility that Miller's application was denied.  This notice was not sent to Ms. Miller and did not contain any hearing or appeal rights.

40.    On December 10, 2015, Defendants sent William Miller, the AR, an "Important Notice" dated December 10, 2015, addressed to Marcella Miller and sent to William Miller stating that "[w]e have determined that you have resources in your name in the amount of $.00 which are in excess of the amount allowed for your spouse to be eligible for Medicaid."  The notice did not contain any hearing or appeal rights.

41.    Parkside Villa, on behalf of Mr. Miller, requested clarification from the agency regarding the notice, did not receive a response.

42.    On January 5, 2016, a second Medicaid application was submitted on behalf of Ms. Miller.

43.    On May 25, 2016, Laurie Phillips, on behalf of Parkside Villa, spoke with Defendants' caseworker Ashombia Hawkins and discovered, for the first time, that the Millers were allegedly over resources in December 2015 due to a combination of bank account and life insurance policies.

44.    Parkside Villa assisted William Miller in cashing out the life insurance policies immediately.

45.    On June 15, 2016, the agency issued a 9401 to Parkside Villa stating benefits were again denied.

46.    On July 23, 2016, the first resource assessment was sent to William Miller.

47.    On July 25, 2016, Parkside Villa received documents from the agency stating that the application was approved as of June 1, 2016.

48.     An appeal was submitted on behalf of Ms. Miller contesting the effective date of Medicaid benefits, and a hearing was held on September 20, 2016.

49.     On November 18, 2016, a state hearing decision was mailed holding Ms. Miller was time-barred from pursuing her appeal.

50.     On December 2, 2016, Ms. Miller appealed that state hearing decision.

51.     The Administrative Appeal Board issued a decision on December 9, 2016, holding the record did not reflect a denial notice was issued to Ms. Miller and remanding the case for new hearing.

52.     The remanded state hearing occurred on January 17, 2017.

53.     At the January 17, 2017, state hearing, Laurie Phillips, on behalf of Parkside Villa, testified that no denial notice was received by Parkside Villa addressed to Ms. Miller.

54.     At the January 17, 2017, state hearing, the only evidence that Defendants offered to support that a proper denial notice was sent was an "Important Notice" dated December 10, 2015, addressed to Ms. Miller and sent to William Miller stating that "[w]e have determined that you have resources in your name in the amount of $.00 which are in excess of the amount allowed for your spouse to be eligible for Medicaid."

55.     The December 10, 2015, "Important Notice" did not include appeal or hearing rights.

56.     On February 1, 2017, a State Hearing Decision was mailed which held Ms. Miller was time-barred from appeal despite the fact that the agency never issued a denial notice to her.

## STATEMENTS OF FACTS PERTAINING TO PLAINTIFFS HUFFMAN, HUDGINS, MILLER

57.     Medicaid is a cooperative federal and state program established by Title XIX of the Social Security Act for the purpose of furnishing medical assistance to qualified aged, blind or disabled persons and families with dependent children.  42 U.S.C. §§ 1396, 1396u.

58.     Medicaid applicants must comply with certain income and resource standards as a condition of eligibility.

59.     In 2008, Congress passed legislation requiring all states to implement electronic asset verification systems (AVS) in order to obtain information regarding Medicaid applicants, including those seeking Medicaid coverage for long-term care.  42 U.S.C. § 1396w. In addition, state Medicaid agencies can electronically obtain information regarding Medicaid applicants via the Public Assistance Reporting and Information System (PARIS). 42 C.F.R. § 435.945(d).

60.     If the Medicaid agency cannot obtain all the necessary information on a Medicaid applicant via the AVS electronic database.

61.     Federal law prohibits state Medicaid agencies from placing the burden on an applicant in providing verifications of information that are readily available through an electronic system or from other sources.  42 C.F.R. § 435.948(b).

62.     In fact, Federal law imposed on Medicaid agencies an affirmative duty to obtain information regarding a Medicaid applicant's eligibility.  This duty exists independent of the actions of the Medicaid applicant and is consequently not dependent on the extent of an applicant's efforts to obtain eligibility information, or on an applicant's request for assistance. 42 C.F.R § 435.952.

63.     In addition, Medicaid agencies are not permitted to ask applicants to produce information unless that information is unavailable electronically.  42 C.F.R. § 435.952(c).

64. In the event that a Medicaid agency is unable to obtain the necessary verification through AVS, PARIS, or secondary sources, federal law provides that a Medicaid applicant's information and resources are not a cause for denial when they are unavailable to the applicant. 20 C.F.R. 416.1201(a)(1).

65. Under the Federal laws and regulations, an applicant can be denied Medicaid only when he or she, or their representative, refuse to obtain information and/or refuse to allow the caseworker to obtain that information.

66. Furthermore, Ohio regulation OAC 5160:1-2-01(F)(5) governs the Agency's response to the Application of a mentally incapacitated applicant as follows:

> (5) When determining eligibility for an individual with a physical or mental impairment that substantially limits the individual's ability to access verifications, and who has not granted any person durable power of attorney, or who does not have a court-appointed guardian or a person with other legal authority and obligation to act on behalf of the individual, the administrative agency must:
>
> (a) Determine if another person is available to assist with obtaining verifications or accessing the individual's means of self-support.
>
> (i) If such a person is available, request the person assist with obtaining the verifications or accessing the individual's means of self-support.
>
> (ii) If verifications are provided, or if means of self-support are accessed by the individual or on the individual's behalf by another person, the administrative agency must consider the verified criteria or means or self-support in the eligibility determination process.
>
> (b) **If no person is available to assist the individual:**
>
> (i) Refer the individual's case to the administrative agency's legal counsel and request counsel evaluate whether the matter should be referred to the probate court, adult protective services, or another entity deemed by the administrative agency's legal counsel to be appropriate. For cases referred to counsel for such evaluation, the administrative agency must also:
>
> (a) Note in the individual's case record that verifications or means of self-support are not available and must not be considered a disqualifying factor until a means of access to those items is obtained or established, and

11

(b) Inform the administrative agency's legal counsel of any eligibility approval or denial.

(ii) **Determine eligibility** in accordance with Chapter 5160:1-2 of the Administrative Code, but **without considering eligibility factors for which verification cannot be obtained or means of self-support that cannot be accessed** because of the physical or mental impairment. Use **the most reliable information available** without delaying the determination of eligibility.

(iii) Redetermine eligibility once a means of access to verifications or means of self-support is obtained or established. If such access has not been obtained prior to a regularly-scheduled renewal, determine continuing eligibility using the most reliable information available.

OAC 5160:1-2-01(F)(5)(emphasis added)

67. The clear goal in OAC 5160:1-2-01(F)(5) is to assist the individual with physical or mental disabilities in the application process and in accessing needed benefits. For example, if no "person" is available to assist the individual applying for benefits, OAC 5160:1-2-01(F)(5) directs Defendants to not consider eligibility factors for which verifications cannot be obtained or means of self-support that cannot be accessed because of the physical or mental impairment.

68. Under OAC 5160:1-2-01(F)(5)(b)(i), the county was required to do the following:

Refer the individual's case to the administrative agency's legal counsel and request counsel evaluate whether the matter should be referred to the probate court, adult protective services, or another entity deemed by the administrative agency's legal counsel to be appropriate.

69. Defendants failed to comply with Federal Medicaid regulations in obtaining information pertaining to Plaintiffs' financial and asset information in determining Plaintiffs' eligibility for Medicaid benefits.

70. Defendants further failed to comply with OAC 5160:1-2-01(F)(5)(b)(i) by failing to refer Plaintiffs case to the agency's legal counsel in order to pursue a guardianship.

71.     Plaintiffs Hudgins and Huffman's respective guardians owed a fiduciary duty to act in their respective interest and benefit.  Ohio generally recognizes that "the holder of a power of attorney has a fiduciary relationship with his or her principal."  *Bacon v. Donnet,* 2003 WL 1240142, 29, unreported, citing *In re Scott,* 111 Ohio App.3d at 276, 675 N.E.2d 1350, 1352 (1996).   Ohio courts have generally held that "[a] fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981), quoting *In re Termination of Employment*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). "A fiduciary owes the utmost loyalty and honesty to his principal." *Testa,* 44 Ohio App.3d 161, 165, 542 N.E.2d 654, 659 (1988).

72.     Plaintiffs Huffman and Hudgin's guardians refused or were unable to cooperate and/or act in Plaintiffs' interests or loyalty.  Plaintiffs' guardians breached their fiduciary duties. Defendants were aware and had knowledge of such breach and such unavailability of Plaintiffs' guardians to assist in Plaintiffs' Medicaid applications.

73.     Pursuant to 42 U.S.C. § 1396a(a)(17)(B), state Medicaid plans shall only take into account income and resources that are available to the applicant or recipient.

74.     Federal law further defines the availability of a resource by its liquidity. 20 C.F.R. § 416.1201(a)(1). An applicant's resources are not available when he or she does not have the *power* to liquidate the asset. 20 C.F.R. § 416.1201(a)(1).

75.     Federal law further defines nonliquid resources as "property which is not cash and which cannot be converted to cash within 20 days…" 20 C.F.R. § 416.1201(c).

76.     In essence, Federal law mandates that a Medicaid applicant's resources are not to cause a denial when they are unavailable to the applicant. 20 C.F.R. § 416.1201(a)(1).

77.     42 C.F.R. § 435.913 provides what information a state agency must provide to an applicant concerning the applicant's eligibility for Medicaid upon issuing a denial of benefits.

§ 435.913 Notice of agency's decision concerning eligibility.

The agency must send each applicant a written notice of the agency's decision on his application, and, if eligibility is denied, the reasons for the action, the specific regulation supporting the action, and an explanation of his right to request a hearing.

78.     Furthermore, 42 C.F.R. § 435.917 provides in relevant part:

§ 435.917 Notice of agency's decision concerning eligibility, benefits, or services.

**(a)** *Notice of eligibility determinations.* Consistent with §§ 431.206 through 431.214 of this chapter, the agency must provide all applicants and beneficiaries with timely and adequate written notice of any decision affecting their eligibility, including an approval, denial, termination or suspension of eligibility, or a denial or change in benefits and services. Such notice must -

**(1)** Be written in plain language;

**(2)** Be accessible to persons who are limited English proficient and individuals with disabilities, consistent with § 435.905(b), and

**(3)** If provided in electronic format, comply with § 435.918(b).

**(b)***Content of eligibility notice -*

**(1)***Notice of approved eligibility.* Any notice of an approval of Medicaid eligibility must include, but is not limited to, clear statements containing the following information -

(i) The basis and effective date of eligibility;

(ii) The circumstances under which the individual must report, and procedures for reporting, any changes that may affect the individual's eligibility;

(iii) If applicable, the amount of medical expenses which must be incurred to establish eligibility in accordance with § 435.121 or § 435.831.

(iv) Basic information on the level of benefits and services available based on the individual's eligibility, including, if applicable -

(A) The differences in coverage available to individuals enrolled in benchmark or benchmark-equivalent coverage or in an Alternative Benefits Plan and coverage available to individuals described in § 440.315 of this chapter (relating to exemptions from mandatory enrollment in benchmark or benchmark-equivalent coverage);

14

(B) A description of any premiums and cost sharing required under Part 447 Subpart A of this chapter;

(C) An explanation of how to receive additional detailed information on benefits and financial responsibilities; and

(D) An explanation of any right to appeal the eligibility status or level of benefits and services approved.

**(2)** Notice of adverse action including denial, termination or suspension of eligibility or change in benefits or services. Any notice of denial, termination or suspension of Medicaid eligibility or change in benefits or services must be consistent with § 431.210 of this chapter.

79.     Pursuant to 42 C.F.R. §431.220, applicant has a right to file an appeal when he or she believes the agency (Defendants), has acted erroneously. Such a denial of Plaintiffs' rights to an appeal and fair hearing violates Plaintiffs' rights to due process under 42 U.S.C. § 1983.

80.     42 C.F.R. § 431.220 provides when a hearing is required to be given to a Medicaid applicant or beneficiary:

42 C.F.R. § 431.220   When a hearing is required.

(a)  The State agency must grant an opportunity for a hearing to the following:

(1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness.

(2) Any beneficiary who requests it because he or she believes the agency has taken an action erroneously.

(3) Any resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be transferred or discharged.

(4) Any individual who requests it because he or she believes the State has made an erroneous determination with regard to the preadmission and annual resident review requirements of section 1919(e)(7) of the Act.

(5) Any MCO, PIHP, or PAHP enrollee who is entitled to a hearing under subpart F of part 438 of this chapter.

(6) Any enrollee in a non-emergency medical transportation PAHP (as that term is defined in §438.9 of this chapter) who has an action as stated in this subpart.

15

(7) Any enrollee who is entitled to a hearing under subpart B of part 438 of this chapter.

42 C.F.R. § 431.220

81.     42 C.F.R. § 431.221, further sheds light on what the Federal Medicaid Act deems as sufficient due process:

§ 431.221 Request for hearing.

**(a)**

**(1)** The agency must establish procedures that permit an individual, or an authorized representative as defined at § 435.923 of this chapter, to -

(i) Submit a hearing request via any of the modalities described in § 435.907(a) of this chapter, except that the requirement to establish procedures for submission of a fair hearing request described in § 435.907(a)(1), (2) and (5) of this chapter (relating to submissions via Internet Web site, telephone and other electronic means) is effective no later than the date described in § 435.1200(i) of this chapter; and

(ii) Include in a hearing request submitted under paragraph (a)(1)(i) of this section, a request for an expedited fair hearing.

**(2)** [Reserved]

**(b)** The agency may not limit or interfere with the applicant's or beneficiary's freedom to make a request for a hearing.

**(c)** The agency may assist the applicant or beneficiary in submitting and processing his request.

**(d)** The agency must allow the applicant or beneficiary a reasonable time, not to exceed 90 days from the date that notice of action is mailed, to request a hearings.

82.     42 C.F.R. § 431.223 provides for when a state agency may deny or dismiss a request for a hearing:

§ 431.223 Denial or dismissal of request for a hearing.

The agency may deny or dismiss a request for a hearing if -

**(a)** The applicant or beneficiary withdraws the request. The agency must accept withdrawal of a fair hearing request via any of the modalities available per § 431.221(a)(1)(i). For telephonic hearing withdrawals, the agency must record the individual's statement and telephonic signature. For telephonic, online and other electronic withdrawals, the agency must send the affected individual written

16

confirmation, via regular mail or electronic notification in accordance with the individual's election under § 435.918(a) of this chapter.

**(b)** The applicant or beneficiary fails to appear at a scheduled hearing without good cause.

83.    The right to notice is a fundamental right – the cornerstone of constitutional protections.  Where the "notice" fails to satisfy federal and state due process requirements, it does not trigger the limitations period for filing an appeal and an appeal from a defective notice cannot not be dismissed on timeliness grounds.  See, e.g., *Grossi v. Division of Social Services of the Dep't of Health and Human Services of the State of Delaware,* C.A. No. 94A-08-016, 1995 WL 562141 (Del. Super. Aug. 8, 1995); *Ribaudo v. Dep't of Public Welfare*, 969 A.2d 1184 (Pa. 2008); *Martin v. Dep't of Public Welfare*, 514 A.2d 204 (Cmwlth. 1986).

84.    Defendants here have brazenly denied Plaintiffs the right to proper notice and the right to an appeal and fair hearing.

85.    Defendants' failure to comply with federal law and regulations regarding Plaintiffs' Medicaid benefits, to which they are entitled under federal and state law, place Plaintiffs at risk of being discharged from their respective facilities jeopardizes her health, safety, and well-being, and causes them to accumulate debt they cannot pay, thereby depriving the nursing care facilities which provide care to Plaintiffs of their right to full compensation as a third party beneficiary of the agreement between the Defendants and Plaintiffs to pay to their respective facilities the benefits due to it for 24-hour care provided to Plaintiffs and for which Plaintiffs are eligible.

86.    Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

87.     In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to the Plaintiffs with "…reasonable promptness…".

88.     At all times relevant hereto, Plaintiffs Hudgins, Huffman, and Miller were "qualified individuals with a disability," as defined under the ADA, 42 U.S.C. § 12132 *et. seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et. seq.*, and 28 C.F.R. § 35.130 *et. seq.*

89.     Defendants' failure to afford Plaintiffs public benefits and services, to which they are entitled under federal and state regulations, and failure to grant Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 et seq. and 28 C.F.R § 35.130 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, and 28 C.F.R. § 35.130 e*t seq.*

90.     By failing to comply with the federal rules and regulations regarding eligibility and determining resources when assessing Plaintiffs' applications for Medicaid benefits, Defendants have deprived Plaintiffs and continues to deprive Plaintiffs, of the rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, and as preempted by the Supremacy Clause of the United States Constitution, Article VI.

91.     Because Defendants have failed to comply with Federal Medicaid law, applicable authority authorizes the automatic approval of Plaintiffs' Medicaid benefits and adjustment of countable resource.  *See Smith v. Miller,* 665 F.2d 172, 176 (7th Cir. 1981).

92.     Defendants' failure to afford Plaintiffs public benefits and services to which they are entitled under federal law, and failure to grant Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the Americans with Disabilities Act and Rehabilitation Act, 42 U.S.C. § 12132 *et seq.* and 29 U.S.C. § 701, e*t seq.*

93.     Defendants' failure to allow Plaintiffs reasonable accommodation due to their disabilities and inability to access certain income constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act.

94.     Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process of obtaining coverage for outstanding medical expenses constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act.

95.     Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process by placing the burden of obtaining financial documents and verifications entirely on the disabled Plaintiffs constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act.

96.     The failure of Defendants to take Plaintiffs' disability and/or incapacity and/or inability to manage their own affairs into account to ensure that Plaintiffs received care which was medically necessary and which they required for their health and survival unequivocally discriminates against Plaintiffs and other similarly situated disabled individuals, by denying them the right to qualify for vital public benefits.  An incompetent and/or disabled person who is unable to by reason of their disability to properly gain access to funds and/or obtain coverage for outstanding medical expenses as permitted by law unlawfully discriminates against such persons as a result of their disability.

97.     The burden placed on Defendants, should the Court grant the relief requested in this action, is simply that Defendants will be required to comply with federal Medicaid laws;

Defendants stand to suffer diminutive, if any, burden by affording the Plaintiffs public benefits to which they are entitled pursuant to federal law.

## CAUSES OF ACTION
## COUNT ONE  - DECLARATORY JUDGMENT

98.     The Plaintiffs incorporate all paragraphs set out above as if fully set out herein.

99.     Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs seek declaratory relief by this Court.

100.    It is well settled that the district court's exercise of discretion in a declaratory judgment action should be informed by a number of prudential factors, including: (1) considerations of practicality and efficient judicial administration; (2) the functions and limitations of the federal judicial power; (3) traditional principles of equity, comity, and federalism; (4) Eleventh Amendment and other constitutional concerns; and (5) the public interest. *Smith & Usaha, supra* note 2, at 116, *citing . Wilton v. Seven Falls Company, 515 U.S. 288 (1995); Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Rickover*, 369 U.S. 111 at 112-13; *Public Service Commission of Utah v. Wycoff Company,* 344 U.S. 237, 243-47 (1952). Perhaps the most important factors are whether a declaratory judgment will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha, supra not*e 2, at 116 (collecting cases); *Wilton*, 515 U.S. at 288; *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Rickover*, 369 U.S. 111 at 112-13*G*; *Wycoff*, 344 U.S. at 244.

101.    Plaintiffs seek a declaratory judgment in this matter requiring Defendant to afford Plaintiffs proper notice, hearing, and appeal rights; requiring Defendants to comply with Federal Medicaid regulations, including obtaining information pertaining to Plaintiffs' financial and asset information through AVS, PARIS, or secondary sources; requiring Defendants to comply with OAC 5160:1-2-01(F)(5); requiring Defendants to provide to Plaintiffs nursing facility services as

required by 42 U.S.C. § 1396a(a)(10); requiring Defendants to provide to Plaintiffs nursing facility services with reasonable promptness as required by 42 U.S.C. § 1396a(a)(8); and, requiring Defendants to afford to Plaintiffs reasonable accommodation due to their disabilities as required by the Americans with Disabilities Act and Rehabilitation Act.

## COUNT TWO - VIOLATION OF THE FEDERAL MEDICAID ACT'S MEDICAL ASSISTANCE, AND NURSING FACILITY SERVICES MANDATE

102.    Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

103.    In violation of the medical assistance and nursing facility services provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(A), the Defendants, while acting under the color of law, has failed to provide Plaintiffs with nursing facility services necessary for the health and welfare of the disabled Plaintiffs.

104.    The Defendants' violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983.

## COUNT THREE - VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT

105.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

106.    Plaintiffs are a Medicaid-eligible individual who required nursing facility services and resided in Illinois.

107.    The Defendants are engaged in the repeated, ongoing failure to arrange and provide medical assistance and nursing facility services despite the fact that medical assistance and nursing facility services were medically necessary for Plaintiffs.

108.    In violation of 42 U.S.C. § 1396a(a)(8) of the Federal Medicaid Act, the Defendants, while acting under the color of law, failed to provide services to Plaintiff with

"…reasonable promptness…". Furthermore, the Defendants are required to administer the Medicaid program in compliance with 42 C.F.R. §435.930 (requiring applicants be afforded Medicaid benefits without any delay).

109.   The Defendants' violations, which have been repeated and knowing, entitle Plaintiff to relief under 42 U.S.C. § 1983.

## COUNT SIX – VIOLATION OF DUE PROCESS CLAUSE –14TH AMENDMENT OF U.S. CONSTITUTION AND 42 U.S.C. § 1983

110.   Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

111.   To comply with the Due Process guarantees under the United States Constitution, the Defendants must provide the Plaintiffs with a meaningful notice that apprises them of the reasons for denial of assistance and the authority for the denial, and afford to Plaintiffs sufficient appeal and fair hearing rights.

112.   Furthermore, Plaintiffs are entitled to accommodations due to their physical and/or mental incapacity that allow Plaintiffs to access benefits under the Medicaid program for which they are eligible. Plaintiffs are additionally entitled to a hearing when such benefits are denied to Plaintiffs and for the reasons enumerated under the Federal Medicaid act.

113.   Defendants' failed to issue proper notices to Plaintiffs and/or failed to adequately apprise Plaintiffs of the actions against Plaintiffs, or of the reasons for the denial, or the authority for the denial.  The notices are therefore inconsistent with the Due Process Clause of the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq*., and its implementing regulations.

114.   Defendants' further failed to afford proper hearing and appeal rights to Plaintiffs and such actions are inconsistent with the Due Process Clause of the United States Constitution,

Amendment XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq*., and its implementing regulations.

115.    The Defendants acted wilfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, or immunities secured by the Fourteenth Amendment to the United States Constitution and by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

116.    The above acts were committed under color of state law by the Defendants. Said acts were committed by the Defendants by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants

## COUNT TWO – VIOLATION OF THE "AMERICANS WITH DISABILITIES ACT" ("ADA"), 42 U.S.C. §12132

117.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

118.    Title II of the Americans with Disabilities Act ("ADA") prohibits Defendants and other Ohio entities from excluding participation by, or denying benefits to, a disabled individual. 28 C.F.R. § 35.130(a). See also, 42 U.S.C. § 12132

119.    The Defendants have failed to provide a system which ensures that medical assistance will be available, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

120.    Plaintiffs are "qualified individuals with a disability," as defined under the ADA.

121.    Defendants' application of Federal and state Medicaid rules and regulations, and specifically Defendants' policies and practices in the Medicaid application process, unfairly discriminated against Plaintiffs on the basis of their disabilities.

23

122.    The Defendants' failure to afford Plaintiffs public benefits and services, to which they are entitled under Federal law, without adequate due process, and failure to grant Plaintiffs Medicaid benefits as a reasonable accommodation in the eligibility and application process, constitutes actual or predictable discrimination in violation of the ADA.

123.    Defendants' failure to allow Plaintiffs reasonable accommodation due to their disabilities and inability to access certain income constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the ADA.

124.    Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process of obtaining coverage for outstanding medical expenses constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the ADA.

125.    Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process by placing the burden of obtaining financial documents and verifications entirely on the disabled Plaintiffs constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the ADA.

126.    The failure of Defendants to take Plaintiffs' disability and/or incapacity and/or inability to manage their own affairs into account to ensure that Plaintiffs received care which was medically necessary and which they required for their health and survival unequivocally discriminates against Plaintiffs and other similarly situated disabled individuals, by denying them the right to qualify for vital public benefits.  An incompetent and/or disabled person who is unable to by reason of their disability to properly gain access to funds and/or obtain coverage for

outstanding medical expenses as permitted by law unlawfully discriminates against such persons as a result of their disability.

127.    Defendants' actions disproportionately impact disabled persons such as Plaintiffs.

128.    The Defendants' practices and policies favor similarly-situated Medicaid applicants and beneficiaries who do not suffer from disabilities that would otherwise leave them unable to access their income and resources.

129.    Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiffs of their rights, privileges, or immunities secured by the Americans with Disabilities Act by failing to follow the federal regulations and Medicaid laws stated herein, which in turn denied Plaintiffs access to services and benefits to which they are entitled as result of their disabilities.

130.    As a consequence of Defendants' actions as described herein, Plaintiffs suffered damages, including compensatory, mental anguish, and other damages.

## COUNT THREE – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

131.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

132.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of Federal funds from discriminating against any individual by reason of disability. Public and Federally-funded entities, such as Defendants, must ensure, and has failed to ensure to Plaintiffs, that "no qualified handicapped person, shall on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives or benefits from federal financial assistance." See 28 C.F.R § 41.51(a).

133.    The Rehabilitation Act prohibits Defendants from excluding participation by, or denying benefits to, a disabled individual. 45 C.F.R. § 84.4(a).  See also 42 U.S.C. § 794.

134.    Defendants' application of Federal and state Medicaid rules and regulations, and specifically Defendants' policies and practices in the application and eligibility process, unfairly discriminated against Plaintiffs on the basis of their disabilities.

135.    Defendants have directly, or through contractual or other arrangements, utilized criteria or methods of administration i) that have the effect of subjecting Plaintiffs to discrimination on the basis of handicap, and ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to Plaintiffs in violation of 28 C.F.R § 41.51(b)(3).

136.    Defendants are recipients of Federal funds under the Rehabilitation Act. Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

137.    The actions by Defendants constitute unlawful discrimination under 29 U.S.C. § 794(a), violate the mandate that no qualified handicapped person should be denied benefits on the basis of handicap, and violate the regulations implementing this statutory prohibition.  28 C.F.R. § 41.51(d).

138.    The Defendant has failed to provide a system which ensures that medical assistance will be available and accessible, including at least the care and services listed in paragraphs (1) through (5) of 42 U.S.C. § 1396d(a), to *all* individuals meeting specified financial eligibility standards, as required under 42 U.S.C. § 1396a(a)(10).

139.    The Defendants' failure to afford Plaintiffs public benefits and services, to which they are entitled under federal law, and failure to grant retroactive Medicaid benefits and making

the necessary income deviations as a reasonable accommodation, constitute actual or predictable discrimination in violation of the ADA, 42 U.S.C. § 12132 *et seq*. and 28 C.F.R. § 35.130 *et seq*.

140.    Defendants' failure to allow Plaintiffs reasonable accommodation due to their disabilities and inability to access certain income constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Rehabilitation Act.

141.    Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process of obtaining coverage for outstanding medical expenses constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Rehabilitation Act.

142.    Defendants' failure to allow Plaintiffs reasonable accommodation in the application and eligibility process by placing the burden of obtaining financial documents and verifications entirely on the disabled Plaintiffs constituted actual or predictable discrimination against Plaintiffs on the basis of their disabilities in violation of the Rehabilitation Act.

143.    The failure of Defendants to take Plaintiffs' disability and/or incapacity and/or inability to manage their own affairs into account to ensure that Plaintiffs received care which was medically necessary and which they required for their health and survival unequivocally discriminates against Plaintiffs and other similarly situated disabled individuals, by denying them the right to qualify for vital public benefits.  An incompetent and/or disabled person who is unable to by reason of their disability to properly gain access to funds and/or obtain coverage for outstanding medical expenses as permitted by law unlawfully discriminates against such persons as a result of their disability.

144.    The Defendants' practices and policies favor similarly-situated residents who do not suffer from disabilities that would otherwise leave them unable to access their income and resources.

145.    Defendants acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her rights, privileges, or immunities secured by the Rehabilitation Act by failing to follow the federal regulations and Medicaid laws stated herein, which in turn denied Plaintiffs access to services and benefits to which they are entitled as result of their disabilities.

146.    As a consequence of' Defendants' actions as described herein, Plaintiffs have suffered damages, including compensatory, mental anguish and other damages.

## COUNT SEVEN – TEMPORARY AND PERMANENT INJUNCTION

147.    Plaintiffs incorporate all paragraphs set out above as if fully set forth herein.

148.    The above acts were committed under color of state law by the Defendants. Said acts were committed by and through representatives of the Defendants acting in their official capacities pursuant to the statutes, ordinances, laws and policies of the Defendants.

149.    The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendants provide to Plaintiffs sufficient notice, and hearing and appeal rights.

150.    The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendants comply with Federal and state regulations in obtaining financial and asset information/verifications of Plaintiffs.

151.    The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendants provide to Plaintiffs necessary and required Medicaid benefits.

152.    The Plaintiffs demand temporary and permanent injunctive relief requiring that the Defendants afford Plaintiffs reasonable accommodation in the application and eligibility

process of obtaining Medicaid benefits as required by the Americans with Disabilities Act and Rehabilitation Act.

## VI. REQUESTS FOR RELIEF

1.      Issue a Declaratory Judgment in favor of Plaintiffs, requiring Defendants to adhere to the requirements of the Federal Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

2.      Declare unlawful the Defendants' failure to arrange for medical assistance and nursing facility services to Plaintiffs; and declare unlawful Defendants' denial of due process to Plaintiffs;

3.      Issue Preliminary and Permanent Injunctive relief enjoining the Defendants from subjecting Plaintiffs to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

4.      Issue Preliminary and Permanent Injunctive relief requiring the Defendants to arrange for medical assistance and nursing facility services to Plaintiffs and allow due process rights to Plaintiffs;

5.      Award Plaintiffs the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, and 42 U.S.C. § 1988; and,

6.      Award such other relief as the Court deems just and appropriate, including, but not limited to, compensatory and punitive damages, interest, expenses and costs.

   **PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**


   **Sb2 INC,**

/s/ Elizabeth Wilfong
OH# 0088172
1426 N. 3rd St. Suite 200
Harrisburg, PA 17102
Phone: (513) 814-4144
Fax: (717) 909-5925
ewilfong@sb2inc.com

s/ Katie Z. Van Lake
IL ARDC# 6292120
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17102
Telephone: (516) 509-1289
Facsimile: (717) 909-5925
kvanlake@sb2inc.com