# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

COMMUNICARE, LLC
d/b/a GREENBRIER HEALTHCARE
CENTER, as authorized representative
of HESTLE HUFFMAN, *et al.*,

      Plaintiffs,

  v.

CYNTHIA C. DUNGEY, *et al.*,

      Defendants.

Case No.: 2:17–cv–934
JUDGE GEORGE C. SMITH
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court upon Defendants Cynthia Dungey and Barbara Sears' Motion to Dismiss (Doc. 15).[1] Plaintiffs responded in opposition (Doc. 19) and Defendants replied in support (Doc. 22). This motion is now ripe for review. For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

### I. BACKGROUND

This lawsuit generally involves the obligations of the Ohio Department of Medicaid ("ODM") under the Social Security Act and Federal Medicaid Regulations. Plaintiffs are nursing home facilities bringing claims on behalf of specific residents: Hestle Huffman, Opal Hudgins, and Marcella Miller, challenging the denial of their Medicaid applications. Plaintiffs allege violations of the Medicaid Act, Title II of the Americans with Disabilities Act, § 504 of

---

[1] Document 15 is an Amended Motion to Dismiss to correct an error in the original Motion to Dismiss, Document 14. Therefore, Document 14 is denied as moot.

the Rehabilitation Act of 1973; and § 1983 claims for violation of due process and equal protection.

**A.     The Parties**

Plaintiff CommuniCare, LLC, d/b/a Greenbrier Healthcare Center ("CommuniCare") is a limited liability company that owns and operates Greenbrier, a skilled nursing facility in Parma Heights, Ohio. (Doc. 1, Compl. ¶ 1). Plaintiff Saber Healthcare Group is a limited liability company that owns and operates Bath Manor Special Care Center ("Bath Manor"), a skilled nursing facility in Akron, Ohio. (*Id*. at ¶ 2). Plaintiff Legacy Health Services is an Ohio corporation that owns and operates Parkside Villa, a skilled nursing facility located in Cleveland, Ohio. (*Id*. at ¶ 3). These nursing facilities are all beneficiaries of Ohio Medicaid benefits.

Plaintiff Hestle Huffman has been a resident of Greenbrier since September 4, 2014. He receives 24-hour long term care and nursing care services. (*Id*. at ¶¶ 13–14). At all times relevant to the Complaint, the Mr. Huffman lacked the mental and physical capacity to act on his own behalf. (*Id*. at ¶ 19). On November 20, 2014, an attorney was appointed as Mr. Huffman's guardian. On October 24, 2016 and November 28, 2016, applications for Medicaid benefits were submitted by Greenbrier on Mr. Huffman's behalf. (*Id*. at ¶¶ 15–16). On February 6, 2017, Mr. Huffman's Medicaid applications were denied due to requested documentation and/or documents not submitted. (*Id*. at ¶ 21).

Plaintiff Opal Hudgins has been a resident of Bath Manor since October 27, 2016. She requires 24-hour long term care and nursing care services. (*Id*. at ¶¶ 22–24). At all times relevant to the Complaint, Ms. Hudgins lacked the mental and physical capacity to act on her own behalf. (*Id*. at ¶ 30). On December 1, 2016, a legal guardian was appointed for Ms. Hudgins. On January 5, 2017, an application for Medicaid benefits was submitted. (*Id*. at

¶¶ 25–26). On April 14, 2017, Ms. Hudgins' Medicaid application was denied due to resources in excess of the Medicaid eligibility limits. (*Id*. at ¶ 33).

Plaintiff Marcella Miller has been a resident of Parkside Villa since January 16, 2015. She suffers from numerous medical conditions, including dementia, that require 24-hour care and nursing services. (*Id*. at ¶¶ 34–35). On March 4, 2015, an application for long term care Medicaid benefits was submitted on behalf of Ms. Miller. (*Id*. at ¶ 37). On March 19, 2015, Ms. Miller appointed her husband William Miller as her designated representative. (*Id*. at ¶ 38). On December 10, 2015, notice was sent to Parkside Villa that Ms. Miller's application was denied. (*Id*. at ¶ 39). A second Medicaid application was submitted on January 5, 2016, but it was also denied. (*Id*. at ¶¶ 42–56).

Defendant Cynthia C. Dungey is the Director of the Ohio Department of Job and Family Services ("ODJFS"), which was the state agency responsible for administering and supervising Ohio's Medicaid progam. At all times material to this Complaint, Defendant Dungey acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only. (*Id*. at ¶ 4).

In 2013, ODM took over as the agency that administers and supervises Ohio's Medicaid program. Defendant Barbara Sears is the director of ODM and at all times material to this Complaint, Defendant Sears acted under color of state law in administering the regulations, customs, policies, and practices material herein. She is sued in her official capacity only. (*Id*. at ¶ 5).

**B.      Medicaid Generally**

Medicaid is a cooperative federal and state program established by Title XIX of the Social Security Act for the purpose of providing medical assistance to qualified aged, blind or

disabled person and families with dependent children. 42 U.S.C. §§ 1396, 1396u. Participating states receive federal financial assistance, and the states must follow the requirements of 42 U.S.C. § 1396a(a), the Medicaid Act and its rules and regulations. The type of Medicaid at issue in this case is Medicaid for the aged, blind, and disabled ("ABD Medicaid"). Medicaid provides health care benefits to qualifying low-income individuals. In order to be eligible for nursing home coverage through ABD Medicaid for the time period in question, an applicant had to show that he/she had less than $1,500 in countable resources and met other eligibility criteria. *See, e.g.,* Ohio Admin. Code 5160:1-3-05.1(B)(1); 5160:1-3-03.1 (outline of certain income standards).

Plaintiffs initiated this case on October 24, 2017, alleging Defendants have failed to comply with federal law and regulations regarding the individually named Plaintiffs' Medicaid benefits, including violations of the Medicaid Act, the equal protection and due process clauses of the Fourteenth Amendment, Title II of the Americans with Disabilities Act, the Rehabilitation Act of 1973, and § 1983 claims for violation of due process and equal protection.

## II.   STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320,

325 (6th Cir. 1990)). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

Defendants also bring their motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted. Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiffs every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a

recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendants Cynthia Dungey and Barbara Sears have moved to dismiss all of Plaintiff's claims against them for lack of subject matter jurisdiction, specifically, lack of standing, and alternatively, for failure to state a claim upon which relief may be granted. The Court will address the arguments of the parties in turn.

**A.   Standing**

Defendants argue that Plaintiffs lack standing to sue on the individuals behalf for the following three reasons: 1) authorized representatives may not initiate federal lawsuits on behalf of Medicaid applicants; 2) even if authorized representatives could initiate lawsuits, they cannot bring civil rights claims on behalf of someone else; and 3) Greenbrier and Parkside Villa are no longer Mr. Huffman and Ms. Miller's authorized representatives. (Doc. 15, Defs.' Mot. to Dismiss at 7, 10).

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A federal court must not go "beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If the plaintiff lacks standing, the federal court lacks jurisdiction. Thus, standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498

(1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.*

Standing under Article III has three elements. "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal alterations omitted). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561. The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Last, each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.

For an injury to be cognizable under current standing doctrine, it must be particularized meaning it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. \_\_\_\_, 7, 136 S.Ct. 1540 (2016) (internal quotations omitted). Additionally, the injury must be concrete, meaning it must actually exist and must be real and not abstract. *Id.* at 8 (quoting Webster's Third New Int'l Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)). However, the injury need not necessarily be tangible. *Id.* at 8–9 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id.* at 9 (quoting *Lujan*, 504 U.S., at 578). However, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a

7

statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Specifically, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 9–10.

### 1. Authorized Representatives Authority to Initiate Lawsuits

Defendants argue that the nursing facilities Plaintiffs lack standing to bring this action on behalf of the individual residents because the authorized representative relationship does not authorize them to initiate a federal lawsuit. Plaintiffs counter that both Mr. Huffman and Mrs. Miller executed Authorized Representative agreements expressly designating their respective facilities to pursue any legal proceedings regarding their Medicaid eligibility.

Pursuant to 42 C.F.R. § 435.923(a)(1), a Medicaid applicant or beneficiary may "designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency." The regulations further state:

> Applicants and beneficiaries may authorize their representatives to—
>
> (1) Sign an application on the applicant's behalf;
> (2) Complete and submit a renewal form;
> (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency;
> (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.

42 C.F.R. § 435.923(b)(1)–(4).

Similarly, pursuant to the Ohio Administrative Code, "[a]n individual may designate any person or organization to serve as that individual's authorized representative." Ohio Admin. Code 5160-1-33(A). "The designation of an authorized representative must be in writing, and must identify what duties the individual is authorizing the representative to perform." Ohio Admin. Code 5160-1-33(A)(3).

Defendants assert that even assuming the nursing facilities have been properly designated as the individuals authorized representative, that power is limited to the actions enumerated above in § 435.923, and mirrored in Ohio Administrative Code section 5160:1-2-08(B)(1)(a)–(f). In support of their position, Defendants reference Ohio and federal court cases addressing this issue. In *Dey v. Ohio Dept. of Job & Family Servs.,* No. CV-874747 (Cuyahoga C.P. May 10, 2017), the court held that an authorized representative's authority is limited to the narrow restrictions contained in Ohio Revised Code 5101.35(E), Ohio Administrative Code 5101:6-3-02(A)(3), and 42 C.F.R. 435.923(a)(1) and does not extend to the filing of a lawsuit. In *Means v. Ohio Dept. of Job & Family Servs*, No. CV-14-834943 (Cuyahoga C.P. Feb 10., 2015), the court held that the authorized representative form that the decedent signed in that case enumerated the powers granted to the authorized representative and did not include the power to file an appeal.

In *Hillspring Health Care Ctr., LLC, v. Dungey*, No. 1:17-cv-35, 2018 WL 287954 (S.D. Ohio Jan. 4, 2018), Magistrate Judge Bowman recently concluded that a nursing facility did not have authority, as the resident's authorized representative, to initiate a federal civil rights lawsuit on the resident's behalf. Additionally, in *Communicare, LLC v. Dungey*, No. 2:17-cv-433 (S.D. Ohio Feb. 14, 2018), Judge Watson recently dismissed a similar lawsuit holding that "42 C.F.R. § 435.923 does not permit applicants or beneficiaries to grant authorized representatives the authority to initiate civil rights lawsuits." *Id*. at 7.

Plaintiffs counter that authorized representatives do have standing to initiate litigation on behalf of a Medicaid applicant/beneficiary pursuant to 42 C.F.R. § 435.923. In support, Plaintiffs reference *Doctors Nursing & Rehab. Ctr., LLC, v. Norwood*, No. 1:16-cv-9837, *et al.*, 2017 WL 2461544, at *3–4 (N.D. IL. June 7, 2017), which found in dicta that nursing home facilities that have been *expressly authorized* by a resident to initiate litigation has statutory

9

authority to do so under 42 C.F.R. § 435.923(b)(4). The court determined that initiating litigation fell under the (b)(4) catch-all provision, "[a]ct on behalf of the applicant or beneficiary in all other matters with the agency." *Id.* at *4 (citing 42 C.F.R. 435.923(b)(4)).[2] Plaintiffs also rely on *Tiggs v. Ohio Dep't of Job and Family Svcs.*, CV-17-874398 (Ohio Ct. Comm. Pl. July 11, 2017), asserting that based on the authorized representative form, the facility had standing to bring Medicaid litigation on behalf of its resident. (Doc. 19, Pls.' Resp. at 7).

However, both Magistrate Judge Bowman and Judge Watson rejected the reasoning adopted in *Norwood*—that maintaining a federal lawsuit falls within the purview of §435.923(b)(4)'s "all other matters with the agency" clause—because "that clause plainly limits the authorized representative's authority to actions on behalf of the 'applicant.'" *Hillspring* at *5. Because the deceased resident was not an "applicant" as defined by the federal regulations at the time the lawsuit was filed, the § 435.923(b)(4) clause could not authorize the nursing center to file the lawsuit on her behalf. *Id.* Further, Judge Watson concluded that regardless of the status of the individual plaintiff, "the authorization form itself does not grant Plaintiff the authority to maintain a lawsuit for civil rights violations stemming from a wrongful denial of Medicaid benefits." *Communicare, LLC v. Dungey*, No. 2:17-cv-433 (S.D. Ohio Feb. 14, 2018).

---

[2] Plaintiffs also reference *Westminister Nursing Ctr. v. Cohen*, No. 5:17-cv-96-FL, 2017 WL 5632661 (E.D.N.C. Nov. 22, 2017), another case that determined that a nursing center had standing to pursue litigation in federal court on behalf of its residents. That court, however, did not base its holding on 42 C.F.R. § 435.923 but rather concluded that the nursing center plaintiff had standing to sue in its own right for claims pertaining to residents who had expressly assigned their right to receive Medicaid benefits to the plaintiff nursing center and that the nursing center had *organizational* standing to sue on behalf of those residents who did not assign their rights to receive Medicaid benefits to the nursing center. *Id.* at *3.

Plaintiffs argue alternatively that they have organizational standing; however, that argument is not well taken. Plaintiffs are proceeding in this case as the authorized representative of the individuals; nowhere have Plaintiffs plead that they are proceeding as representatives of its "members." Moreover, the Court agrees with the reasoning in *Hillspring Health Care Ctr., LLC, v. Dungey*, 1:17-cv-35, 2018 WL 287954, *6 n.12 (S.D. Ohio Jan. 4, 2018) and Judge Bowman's conclusion in that case that a nursing facility would not have associational standing in a case such as this.

Similar to *Norwood*, *Tiggs* does not extend the scope of authorized representation to this case. In *Tiggs*, the court of common pleas relied on *Norwood* to support a finding that the authorized representative could pursue an appeal of a Medicaid eligibility determination to that court to receive a "final determination" as to the appellant's benefits. *Tiggs*, however, does not suggest that an authorized representative may assert vicarious claims in federal court proceedings on behalf of a deceased individual even after a final determination is made by the state court of common pleas.

Here, Plaintiffs have presented three authorized representative forms, attached in support of their response in opposition to Defendants' Motion to Dismiss. First, with respect to Mr. Huffman, his designation of authorized representative form was signed on January 5, 2018, after this lawsuit was initiated. (*See* Doc. 19-1, PAGEID #386). Defendants argue, and the Court agrees, that there is no evidence that Greenbrier was Mr. Huffman's authorized representative at the time of filing this Complaint and therefore Plaintiffs have failed to establish standing with respect to Mr. Huffman.

Even if the earlier form for Mr. Huffman were somehow valid (Doc. 15-14), neither that form, nor the forms signed by Mrs. Miller (Doc. 19-1, PAGEID #385) or Mrs. Hudgins (Doc. 19-1, PAGEID #384), authorize the nursing facilities to initiate this lawsuit. The authorized representative forms authorize the designated representative to: (1) initiate an application for Medicaid benefits; (2) participate in all reviews of eligibility for Medicaid benefits, and (3) take action as necessary to establish my eligibility for Medicaid. (Doc. 19-1). The initiation of this lawsuit does not fit into any of those categories. It is not an application for Medicaid benefits, or review of the individuals' eligibility, nor an action to establish eligibility. This Court cannot review the individuals' Medicaid eligibility as that would violate the *Rooker-Feldman* doctrine.

Plaintiffs in this case, however, are seeking neither review, nor a determination of their Medicaid benefits. Rather, Plaintiffs are alleging civil rights violations caused by the alleged improper denial of the Medicaid benefits. Again, none of the language of the authorized representative form allows for such a lawsuit. Accordingly, Plaintiffs have failed to establish that they had the authority to bring this lawsuit. Because the Court finds that Plaintiffs have failed to sufficiently establish standing to bring this case on behalf of the individual Plaintiffs, the Court need not address Defendants' remaining challenges regarding the legalities of the Designation of Authorized Representative form, nor the arguments that Plaintiff has failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

Based on the foregoing, Defendants Sears and Dungey's Amended Motion to Dismiss is hereby **GRANTED** (Doc. 15). Defendants' original motion to dismiss is denied as moot (Doc. 14). The Clerk shall **REMOVE** Documents 14 and 15 from the Court's pending motions list. The Clerk shall enter final judgment in favor of Defendants and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

   */s/ George C. Smith*
   **GEORGE C. SMITH, JUDGE**
   **UNITED STATES DISTRICT COURT**